Thomas WILLIAMS, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 6, 2004.

Decided April 12, 2004.

Reargument Denied June 11, 2004.

David C. Harrison, Philadelphia, for petitioner.

Charlene S. Barnaba, Philadelphia, for respondent.

BEFORE: FRIEDMAN, Judge, LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.

Thomas Williams petitions for review of a Workers' Compensation Appeal Board (Board) order that affirmed the decision of a Workers' Compensation Judge (WCJ) dismissing one of Williams's claim petitions as moot, denying the other, and denying his reinstatement and penalty petitions. The pertinent factual and procedural history of this case is discussed below.

Williams suffered a work-related injury to his lumbar spine when, on July 31, 2000, he lifted a one-hundred-pound bag of sugar while working as a Food Service Worker I for the City of Philadelphia. In November of that year, the City filed a notice of compensation payable (NCP), and in February of 2002, Williams was separated from his employment due to a determination that he had suffered a permanent service-connected disability as a result of that injury. Six months after issuance of the NCP, in May of 2001, Williams filed a claim petition with respect to that injury, and in April of 2002 filed reinstatement and penalty petitions, alleging, *inter alia,* that employer failed to pay compensation due. Also in May of 2001, Williams filed a separate claim petition alleging that, on March 14, 2000, he suffered a work-related post-concussive illness with anxiety when he climbed into employer's van, which was located on employer's premises, and hit his head on the van's ceiling. Williams was off duty at the time this incident occurred, and he was entering the "courtesy" van that employer supplied to take employees from their work facility to public transportation.

After hearings and consideration of the evidence, the WCJ dismissed and/or denied all of Williams's petitions. In doing so, she dismissed the claim petition relating to the July 31, 2000, injury as moot, since an NCP had issued for that injury; the penalty and "reinstatement" petitions were denied because Williams did not prove that he suffered any wage loss due to that injury. Further, the WCJ concluded as a matter of law that Williams's March 14, 2000, injury did not occur in the course of his employment. On appeal, the Board affirmed, and Williams then filed a petition for review with this court.

■ We first consider whether the injury suffered by Williams on March 14, 2000, was work-related. Williams asserts that the Board erred by deciding that this injury was not compensable. In support of his contention, Williams notes that, even though he was off duty when the incident occurred, the van was on employer's premises when he was hurt, his supervisor was the van's driver, and the van was provided by employer on a daily basis. Williams claims that, therefore, he sustained this injury in the course of his employment.[1]

■ Whether a claimant's injury occurred in the course of his employment as defined by Section 301(c)(1) of the Workers' Compensation Act,[2] 77 P.S. § 411(1), is a question of law subject to our plenary review. *Newhouse v. Workmen's Comp. Appeal Bd. (Harris Cleaning Service, Inc.),* 109 Pa.Cmwlth.96, 530 A.2d 545, 546

---

1. We note that no one has argued the applicability of what is frequently referred to as The Ridesharing Act, Act of December 14, 1982, P.L. 1211, 55 P.S. §§ 695.1–695.9, and so we do not consider the question.

2. Act of June 2, 1915, P.L. 736, *as amended.*

(1987). That provision states that compensable injuries include, *inter alia:*

> [A]ll injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

77 P.S. § 411(1).

Recently, in *Markle v. Workers' Compensation Appeal Board (Bucknell Univ.),* 785 A.2d 151 (Pa.Cmwlth.2001), *petition for allowance of appeal denied,* 568 Pa. 729, 797 A.2d 918 (2002), this court, in an *en banc* opinion, reviewed prior decisions in cases similar to this, *i.e.,* those in which the claimants suffered injuries in or around employers' parking lots while leaving or coming to work. We began by noting the longstanding principle that:

> Case law has now well established that an employee not engaged in the furtherance of the business or affairs of the employer must satisfy three conditions under the Act in order for her injury to be "in the course of employment." *Dana Corp. v. Workmen's Compensation Appeal Board (Gearhart),* 120 Pa.Cmwlth. 277, 548 A.2d 669 (1988), *petition for allowance of appeal denied,* 522 Pa. 606, 562 A.2d 828 (1989). The Act dictates that: (1) the injury must have occurred on the employer's premises; (2) the employee's presence thereon was required by the nature of his em-

ployment; and (3) the injury was caused by the condition of the premises or by the operation of the employer's business thereon. *Id.*

*Markle,* 785 A.2d at 153.

In *Markle,* as here, there was no dispute over the first two conditions, nor would any such dispute have been reasonable. Our courts have long held that an employer's premises includes reasonable means of access to the workplace, whether or not the specific piece of land is owned by the employer. *See Newhouse,* 530 A.2d at 546–47, and cases cited therein. Thus, a claimant injured in the parking lot adjacent to that workplace is plainly on the employer's premises. Moreover, the cases reviewed in *Markle* clearly establish that an employee's presence in the parking lot immediately before or after (s)he arrives at or departs from the workplace is "required by the nature of his employment." 785 A.2d at 153.[3] The *Markle* court then turned to the third condition and concluded:

> In cases previously decided involving injuries suffered in employers' parking lots, we have upheld the award of benefits to claimants who were injured due to the actual physical conditions of the employers' premises....
>
> We have, however, declined to grant benefits to employees not injured by a physical condition of the employer's premises....

785 A.2d at 155–56.

■ However, while the "condition of the premises" factor has been the focus of decades of parking lot injury cases, little if

---

**3.** However, in *Dana Corp. v. Workmen's Compensation Appeal Board (Gearhart),* 120 Pa. Cmwlth.277, 548 A.2d 669 (1988), the claimant was found not entitled to relief, in part because after he completed his shift, he voluntarily stopped to aid a co-worker, and was therefore on the employer's premises longer than he would normally have been, *i.e.,* long-

er than was required by his employment. (In addition, relief was denied because the injury was not caused by the condition of the premises or the operation of the employer's business or affairs, but by the unexpected backward movement of the co-worker's automobile.)

any notice has been paid to the alternative element of the third condition, that the injury be caused by "the operation of the employer's business or affairs thereon." Claimant here argues that this definition is broad enough to encompass the van service operated by employer to take workers to public transportation. We agree. Although the van service was a voluntary activity conducted by employer for the convenience of its employees, we believe our obligation to interpret the act liberally to effectuate its humanitarian purpose[4] requires that we consider this service to be within the scope of the employer's "business or affairs." In addition, we have long ago "rejected the assertion that an employee must show some faulty condition or negligent operation, in order to receive compensation for injuries sustained while on the employer's premises." *Newhouse*, 530 A.2d at 547 [citing *Workmen's Comp. Appeal Bd. v. United States Steel Corp. (Slaugenhaupt)*, 31 Pa.Cmwlth.329, 376 A.2d 271 (1977)]. Finally, the condition of the premises or operation of employer's affairs need not be the immediate or direct cause of claimant's injury; it must simply play some role in the causative chain. *See, e.g., Carl v. Workmen's Comp. Appeal Bd. (G.H. Delp Co.)*, 79 Pa.Cmwlth.332, 469 A.2d 347 (1984); *Port Auth. of Allegheny County v. Workmen's Comp. Appeal Bd. (D'Agostino)*, 66 Pa.Cmwlth.393, 444 A.2d 837 (1982). *Cf. Dana; Anzese v. Workmen's Comp. Appeal Bd. (Strick Corp.)*, 35 Pa.Cmwlth.256, 385 A.2d 625 (1978). Therefore, we reverse the Board on this issue and remand for a determination of the amount of compensation benefits, if any, which are payable with respect to claimant's March 14, 2000 injury.

▮ Williams also asserts that he is entitled to unpaid workers' compensation benefits because he lost intermittent days from work before he was separated from his employer in February 2002 due to his July 31, 2000, work injury. (Post separation benefits are not here in issue.) Specifically, Williams contends that he returned to work two days after the injury and missed days "here and there" due to pain associated with his back injury, but employer improperly failed to pay him for the lost time despite the fact that a NCP had issued. The WCJ found:

> Claimant's testimony does not support his allegation that Defendant failed to pay compensation when due. The Claimant testified that he missed sporadic time from work between the date of the injury and the date of his termination. However, he failed to offer any proof which could lead to a finding that he missed work due to the work injury. Claimant did not testify with any specificity about what days he missed from work. He did not produce any notes from physicians. The only thing the Claimant testified to with only vague specificity was that he believed that five or six days of that time were due to non-work related ailments such as a cold. The Claimant failed to present any evidence to establish which days, if any, were due to his work injury.

Finding of Fact No. 14, WCJ's decision (circulated October 9, 2002) at 3.

> Williams testified on direct examination:
> Some days I would go to work and the pain would be so bad that a couple days I had to be sent home. Some days they would give me medication that I couldn't think straight [sic], that had me dizzy or made me nauseous, so I couldn't work at that time because of the medication.

Notes of Testimony (N.T.), Williams's Testimony, Hearing of April 3, 2002 at 19. He

---

4. *See, e.g., Hoffman v. Workers' Comp. Appeal Bd. (Westmoreland Hosp.)*, 559 Pa. 655, 660, 741 A.2d 1286, 1288 (1999).

also testified: "Might have been a couple days I missed because of like a cold or something." N.T. at 20. On redirect examination, however, Williams estimated that he was out for either a cold or the flu "[m]aybe five or six" times. N.T. at 22.

We agree with the WCJ and the Board that Williams failed to sustain his burden to prove that sporadic missed days after he returned to work were causally connected to his work injury and were not due to some unrelated reason. As the WCJ stated, Williams did not introduce any specific evidence as to which days he was off from work and offered no medical evidence to support his decision to stay home on specific days. While we do not believe that each day off must necessarily be documented with medical evidence, we agree that claimant's testimony was too vague to support a finding that any particular amount of wages was lost as a result of this work related injury. Accordingly, we will affirm the Board with respect to this claim.[5]

### O R D E R

AND NOW, this 12th day of April, 2004, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby REVERSED IN PART and AFFIRMED IN PART. The Board's order is REVERSED with respect to its determination that Williams's March 14, 2000, injury was not suffered in the course of employment, and REMANDED for a determination as to the amount of any compensation payable as a result of that injury.

The Board's order is AFFIRMED with respect to the claim of unpaid disability benefits between July 31, 2000 and February 13, 2002 resulting from his injury of July 31, 2000.

Jurisdiction relinquished.

---

5. As part of this argument, claimant asserts that the report of Dr. Wilhelmina C. Korevaar, the medical director of the City's Employee Disability Program, constituted sufficient evidence that Williams was disabled due to the July 2000 work injury. We fail to see the relevance of this argument, since the city issued an NCP with regard to that injury, and the only issue was whether that injury resulted in a loss of wages during the period before his separation, a question upon which Dr. Korevaar's report sheds no light.